AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
APR 24 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

SIG FOR
T. COUGHLIN
4/20/18

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
(1) Apple iPhone ) Case No. '18MJ8607
Model Number: A1453/ IMEI: 352030065460074 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment "A"

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8 USC, Section 1324 | Bringing in and Harboring Certain Aliens |

The application is based on these facts:
See Attached Affidavit

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Dennis F. Marquez, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 24, 2018 @ 10:00 a.m.

_____
*Judge's signature*

City and state: El Centro, CA

Honorable Peter C. Lewis, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## PROPERTY/ITEMS TO BE SEARCHED

The property/item to be searched is described as:

One Apple iPhone Cellular Phone, with Model number: A1453 and IMEI number: 352030065460074 belonging to Robert McHenry, seized pursuant to his arrest for violation of Title 8 of the United States Code, Section 1324, on April 13, 2018.

This cellular phone is currently in the possession of the Department of Homeland Security, Homeland Security Investigations, ASAC Calexico, California.

## ATTACHMENT B
## PROPERTY/ITEMS TO BE SEARCHED

The items to be seized are electronic data that constitute evidence of the commission of a criminal offense, and electronic data which is and has been used as the means for committing a criminal offense. The specific criminal offenses involved are violations of Title 8 U.S.C. 1324 Bringing in, Harboring, and Transportation of Certain Aliens.

Communications, records, call detail records, data, any deleted data, including but not limited to emails, phone numbers, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to transport and smuggle aliens;
    b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to transport and smuggle aliens;
    c. tending to identify co-conspirators, criminal associates, or others involved in the transport and smuggling of aliens;
    d. tending to identify travel to or presence at locations involved in the smuggling of aliens, such as stash locations, storefronts, delivery points, and residence locations associated with the transport and smuggling of aliens;
    e. tending to identify the user of, or persons with control over or access to, the subject phone; or
    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above

These items may be or lead to: (1) evidence of the attempt to transport and smuggle aliens in violation of Title 8 U.S.C. 1324 Bringing in, Harboring,

and Transportation of Certain Aliens; (2) contraband, fruits of crime, or things otherwise criminally possessed; and (3) property designed or intended for use, or which is or has been used as a means of committing criminal offenses.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
APR 24 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) | Case Number: 18MJ8607 |
| ) | |
| (1)　Apple iPhone ) | AFFIDAVIT OF SPECIAL |
| 　　　Model Number: A1453 ) | AGENT DENNIS F. MARQUEZ |
| 　　　IMEI: 352030065460074 ) | IN SUPPORT OF SEARCH WARRANT |

## AFFIDAVIT

I, Dennis F. Marquez, Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a Human Smuggling investigation conducted by the Department of Homeland Security, Homeland Security Investigations special agents for the following target property a cellular telephone seized from defendant Robert McHENRY (McHENRY) on or about April 13, 2018, when he was arrested in Rialto, California for violations of Title 8 U.S.C. 1324 Bringing in, Harboring, and Transportation of Certain Aliens. At the time of his arrest, McHENRY had possession of a cellular telephone:

   (a) Apple iPhone, Model Number: A1453, IMEI: 352030065460074 ("Target Telephone").

2. The phone was seized from McHENRY on or about April 13, 2018, at and about the time of his arrest. The phone is currently in possession of HSI, 2051 North Waterman Avenue, El Centro, California. MCHENRY has been charged with Bringing in, Harboring, and Transportation of Certain Aliens. Probable cause exists to believe that

target's telephone contains evidence relating to violations of Title 8, United States Code Section 1324. The specified telephones are currently in the possession of the United States Department of Homeland Security, Homeland Security Investigations, El Centro, California.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the following items will be found in the cellular telephones to be searched:

4. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to transport and smuggle aliens;

    b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to transport and smuggle aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in the transport and smuggling of aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling of aliens, such as storage locations, storefronts, delivery points, and residence locations associated with the transport and smuggling of aliens;

    e. tending to identify the user of, or persons with control over or access to, the subject phone; or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

These items may be or lead to: (1) evidence of the attempt to transport and smuggle aliens in violation of Title 8, United States Code Section 1324; (2) contraband, fruits of crime, or things otherwise criminally possessed; and (3) property designed or intended for use, or which is or has been used as a means of committing criminal offenses.

## EXPERIENCE AND TRAINING

5. My name is Dennis F. Marquez and I am a Special Agent employed by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigation (HSI). I have been employed as a special agent since July 2017. I am currently assigned to the Assistant Special Agent in Charge, Calexico, California, Human Smuggling/Human Trafficking Border Enforcement Strike Taskforce (BEST) Group.

6. I have completed 23 weeks of intensive training in criminal investigations at the Federal Law Enforcement Training Center in Glynco, Georgia, in February 2017. As a result of my training and experience as a Special Agent, I am familiar with federal criminal statues to include violations of Title 8 of the United States Code.

7. I am currently assigned to the Assistant Special Agent in Charge, Calexico, California, Human Smuggling/Human Trafficking Border Enforcement Strike Taskforce (BEST) Group.

8. I am a graduate of the ICE Enforcement and Removal Operations (ERO) academy in 2009.

9. I have 8 years prior law enforcement experience with ICE ERO where I previously served as a Deportation Officer.

10. I have participated in and conducted investigations of violations of various Federal immigration laws.

11. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of human smuggling, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

12. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced with human smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Smugglers and traffickers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b. Smugglers and traffickers will use cellular telephones because they are able to actively monitor the progress of their illegal activities from point of origin in Mexico to point of destination in the United States.

c. Smugglers and traffickers and their accomplices will use cellular telephones because they can easily arrange and/or discuss smuggling fees, availabilities of transportation, and costs associated with smuggled aliens.

d. Smugglers and traffickers will use cellular telephones to direct, coordinate the transfer and acquisition of payment for smuggling and trafficking fees, request additional fees from aliens and/or their sponsors, and coordinate drivers to synchronize an exact drop off and/or pick up time of their aliens.

## FACTS SUPPORTING PROBABLE CAUSE

13. On April 3, 2018, at approximately 10:30 a.m., HSI Group Supervisor B. Quigg received information from El Centro Border Patrol regarding a single vehicle accident in the open desert north of Old Evan Hewes Highway and north of Plaster City, California which possibly involved undocumented aliens.

14. At approximately 12:00 p.m., HSI Group Supervisor B. Quigg, Special Agents (SA) P. Lewenthal, D. Marquez, G. Carrillo, D. Sample and Task Force Officers (TFO) D. Lewenthal and J. Rodriguez arrived at the scene of the accident and observed a red Jeep severely damaged and rolled on it's side. An agent on scene, Supervisory Border Patrol Agent Pyle, advised HSI Agents that (8) undocumented aliens had been medically evacuated for emergency care and (1) undocumented alien had been taken into custody and transported to the El Centro Border Patrol station for further processing.

15. At approximately 4:00 p.m., HSI SA P. Lewenthal and SA D. Marquez responded to the El Centro Border Patrol station to interview the undocumented aliens that were passengers in the vehicle that had rolled over.

16. Material Witness Francisco TORRES-Romero stated that he is a citizen and native of Mexico and does not possess immigration documents to reside legally in the U.S.. TORRES stated he traveled from Guerrero, Mexico to Tecate, Mexico, where he made smuggling arrangements and agreed to pay $7500 (USD) to be smuggled to Garden Grove, CA. TORRES stated he crossed the border with (8) others.

17. TORRES stated that once in the U.S., he and the other undocumented aliens were picked up by a white truck driven by a young African American woman. TORRES stated that the woman took them to a hotel, later identified as the Days Inn, in El Centro, California. TORRES stated that there were (3) young African-American men in the room serving as "caretakers" and that the men did not allow TORRES or the other undocumented aliens to leave the room or open the room door.

18. TORRES stated that on the morning of April 3, 2018, he and the (8) undocumented aliens got into a red Jeep. TORRES stated that the driver of the Jeep, later identified as Robert McHENRY, was one of the caretakers at the hotel and that McHENRY was approximately 22 or 23 years old, tall, thin and with braided hair. TORRES stated that they left the hotel in the red Jeep and made a right turn onto a road eventually traveling at a speed of approximately 50 mph. TORRES stated the driver was using a "GPS" for directions. TORRES stated that the driver was on his cell phone and appeared to be telling someone his current location. TORRES stated that the driver drove fast past some factories, where he then broke off onto a dirt road before rolling and crashing. TORRES stated that after the crash he assisted others in getting out of the Jeep and then observed the driver frantically looking for his cell phone and then walking away from the scene of the accident.

19. Material Witness Luis Alberto REYES-Jimenez, stated that he is a citizen and native of Mexico and does not possess immigration documents to reside legally in the U.S. REYES stated that he made smuggling arrangements with an unknown smuggler in Mexicali, Mexico and that he agreed to pay $7000 (USD) once he was smuggled to

Concord, California. REYES stated that he crossed illegally into the U.S. with (8) other undocumented aliens.

20. REYES stated that once in the U.S., a white pickup truck picked them up and took them to a hotel. REYES stated that there were (3) African-American men in the room where he stayed. REYES stated that the next morning at 8:00 a.m., he got into the front passenger's seat of a red Jeep. REYES stated that the driver was an African-American man and that he had "rastas" (dread locks). REYES stated that the driver was on a cell phone and driving fast. REYES stated that the driver drove onto a dirt road for approximately 1 mile and rolled the Jeep. REYES stated that he observed the driver leave the scene of the accident and walk back towards the main road.

21. On April 4, 2018, HSI agents were able to establish the identity of the driver described by the smuggled aliens as Robert McHENRY. McHENRY was identified through Days Inns security video footage taken on April 2, 2018, showing McHENRY walking into the Days Inn lobby as well as video showing McHENRY standing outside a room near the red Jeep and the white pickup truck identified by the material witnesses. Agents were also able to identify McHENRY through social media. A six-pack photographic lineup containing McHENRY'S picture was produced to show the material witnesses.

22. Material Witness Victor Manuel DE LOS SANTOS Perez was interviewed and material witnesses Francisco TORRES-Romero and Luis Alberto REYES-Jimenez were re-interviewed to be shown the six-pack photo lineup with McHENRY's photograph.

23. Material Witness Victor Manuel DE LOS SANTOS-Perez stated that he is a native and citizen of Mexico and does not possess immigration documents to reside legally in the U.S. DE LOS SANTOS stated that his brother made smuggling arrangements for him with unknown smugglers and that he believes he was going to pay $7000 (USD) once he was smuggled to Los Angeles, California.

24. DE LOS SANTOS stated that he crossed illegally into the U.S. near Tecate, California with a group of other undocumented aliens. DE LOS SANTOS stated that a

white pickup truck driven by a young African-American woman picked them up and took them to a hotel where they spent the night. DE LOS SANTOS stated that there were (3) African-American men in the room where he stayed. DE LOS SANTOS stated that the next morning (April 3, 2018), the driver, later identified as McHENRY, instructed him and the other (8) undocumented aliens to get into a red "Cherokee." DE LOS SANTOS stated that the driver was an African-American man with "rastas" (dread locks). DE LOS SANTOS stated that the driver was driving fast and drove onto a dirt road where the driver rolled the vehicle (2) or (3) times. When asked, DE LOS SANTOS stated that there were not enough seat belts for everyone in the vehicle. DE LOS SANTOS stated that he asked the driver for help and that the driver just walked away from the vehicle, towards the main road.

25. DE LOS SANTOS was shown the photographic lineup and identified photo number (2) and photo number (6) as possibly being the driver of the Jeep. Photo number (2) is that of Robert McHENRY.

26. Material witness REYES was shown the photographic lineup and identified photo number (2) as the driver of the Jeep, Robert McHENRY. REYES stated that McHENRY was driving when the Jeep rolled over.

27. Material witness TORRES was shown the photographic lineup and identified photo number (2) as the driver of the Jeep, Robert McHENRY. TORRES also stated that McHENRY was one of the men at the hotel that did not allow him to leave or open the door.

28. On April 5, 2018, an arrest warrant for 8 USC 1324, Alien Smuggling, was issued for McHENRY in the Southern District of California.

29. On April 13, 2018, ASAC Riverside, CA and ASAC Calexico, CA, HSI Special Agents arrested McHENRY outside of his residence, 976 S. Brampton Avenue, Rialto, CA, based on the arrest warrant. McHENRY's identification was confirmed by his California Driver's License and by McHENRY stating who he was. McHENRY was

transported to the Riverside, CA HSI office for an interview. At the time of his arrest, McHENRY's cell phone was in his front right pocket.

30. At approximately 10:09 a.m., SA P. Lewenthal advised McHENRY of his Miranda Warning in English as witnessed by SA D. Marquez. McHENRY stated that he understood his rights and was willing to answer questions without the presence of an attorney.

31. SA Lewenthal asked McHENRY what had happened on April 3, 2018. McHENRY's initial statement was, "I crashed. I panicked." McHENRY then stated that he checked on the people to see if they were okay. McHENRY claimed he had no cell phone service. It should be noted that several of the smuggled undocumented aliens stated that they saw McHENRY on the phone. McHENRY then stated that once he picked up phone reception, he called his friend, Maria Williams, to pick him up. McHENRY stated that Williams drove him back to his home in Rialto, CA.

## METHODOLOGY

32. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some

8

of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. In some instances the phones and its components may be destroyed and/or altered in attempt to recover the information. This process is time and labor intensive and may take weeks or longer.

33. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards, call detail records, and deleted files will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

34. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

35. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that McHENRY's telephones was likely used to facilitate the offense of smuggling aliens by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence, fruits and instrumentalities of illegal activity committed.

36. Based upon my experience and training, consultation with other agents in human smuggling investigations, specifically in smuggling of aliens, consultation with other sources of information, and the facts set forth herein, I believe that the items described in Attachment B are likely to be found on McHENRY's telephone. Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal or state law enforcement agent specially trained in digital evidence recovery, to search the item described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Dennis F. Marquez

Special Agent, HSI

Subscribed and sworn to before me this 24th day of April, 2018.

Hon. Peter C. Lewis

United States Magistrate Judge